# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

═══════════════
## NO. 03-04-00084-CV
═══════════════


**Ford Motor Company, Appellant**

**v.**

**Hanan Butnaru, Gil Butnaru, and Motor Vehicle Board of the Texas Department of Transportation, Appellees**


════════════════════════════════════════════════════════════════════
### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 126TH JUDICIAL DISTRICT
### NO. GN-100847, HONORABLE DARLENE BYRNE, JUDGE PRESIDING
════════════════════════════════════════════════════════════════════


**O P I N I O N**
_____


In this case, we must consider the effect of the Texas Supreme Court's opinion in *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198 (Tex. 2002) ("*Butnaru*"), on related proceedings in the Motor Vehicle Board of the Texas Department of Transportation that predate the opinion. The Board dismissed with prejudice the Butnarus' complaints against Ford concerning possible violations of the motor vehicle commission code. The Butnarus appealed to Travis County district court. While the appeal was pending, the supreme court issued *Butnaru*. Thereafter, in the administrative appeal, the district court relied on *Butnaru* and remanded the Butnarus' complaints for further proceedings before the Board.

Ford appeals the district court's order in six issues, arguing that the court erred in remanding issues to the Board because primary jurisdiction does not mandate any Board action and

that the order is overbroad and intrudes upon matters within the Board's discretion. We will affirm the Travis County district court's order remanding the *Butnaru* issues to the Board under the Board's primary jurisdiction. However, we agree with Ford that the district court's order is overbroad in some respects and modify it accordingly. We affirm the order as modified.

## BACKGROUND

The facts underlying this case are not in dispute and have been described in detail in *Butnaru*, 84 S.W.3d 198, 201-03.

### *The dealership agreement*

Martin Graf is the sole shareholder of Graf Ford, Lincoln, Mercury, Inc., a car dealership in Del Rio, Texas. Graf's dealership agreement with Ford provided that Ford had a "right of first refusal" to purchase the dealership if Graf Ford proposed to sell the dealership to a third party. According to that agreement, Ford had the right to purchase the dealership on the same terms and conditions that Graf Ford had negotiated with the proposed buyer, "regardless of whether the proposed buyer is qualified to be a dealer."

In 1999, the Butnarus entered into a written agreement with Graf to buy Graf Ford. Separately, the Butnarus entered into an agreement to buy the real property, owned by Graf and J. M. Barton, upon which the dealership was located. Graf told the Butnarus about Ford's right of first refusal, and both agreements were "expressly conditioned upon approval by Ford of Hanan Butnaru as a [sic] authorized sales and service dealer" and warranted that neither agreement conflicted with any prior agreement to which Graf or Barton were parties.

In September 1999, Graf informed Ford that he intended to sell the dealership to the Butnarus.  *See* Tex. Occ. Code Ann. § 2301.359 (West 2004).**[1]**  The Butnarus then filed a Prospective Dealer Application with Ford, seeking approval as an authorized dealer.  A month later, Ford informed Graf that it intended to exercise its right of first refusal and offered to pay the Butnarus' reasonable expenses incurred in negotiating the purchase and sale agreements.  On the same day, Ford assigned its right of first refusal to an existing Ford dealer, Clarence Kahlig.  Ford and Graf agreed that Ford would indemnify Graf against damages arising from Ford's exercising its right of first refusal and that Graf would cooperate with Ford in defending any action arising from its exercise of the right.

***The Val Verde County lawsuit***

The Butnarus sued Graf, Graf Ford, and Barton in Val Verde County district court for breach of the agreements.  They also sued Ford for tortiously interfering with the agreements, alleging that Ford's right of first refusal violates a motor vehicle commission code provision that prohibits a manufacturer from denying or preventing a dealership transfer to a qualified applicant. *See id*. § 2301.476.  Thus, the Butnarus sought a declaration that Ford's right of first refusal was unenforceable and a declaration regarding the parties' rights and obligations under the agreements. Finally, the Butnarus requested a temporary injunction to prevent Ford or its assignees from

---

**[1]**  Before June 1, 2003, the relevant statutory provisions were contained in article 4413(36) of the revised civil statutes and were titled the "Texas Motor Vehicle Commission Code." *See* former Tex. Rev. Stat. Ann. art. 4413(36) (West 1976).  In their briefs, the parties cite to the former versions of the provisions. The legislature intended no substantive changes during the codification process, and the parties do not suggest that any changes relevant to our analysis occured, so we will cite the codified versions for convenience. *See* Act of May 22, 2001, 77th Leg., R.S., ch. 1421, §§ 5, 13-14, 2001 Tex. Gen. Laws 4570, 4920-5006, 5020.

exercising its right of first refusal during the pendency of the suit.  Ford opposed this request and filed a plea to the jurisdiction.  Ford argued that the Motor Vehicle Board has exclusive jurisdiction to determine whether a manufacturer has violated the code's provisions.  The Val Verde district court denied Ford's plea and granted the injunction.

Ford sought interlocutory review of the trial court's temporary injunction with the San Antonio court of appeals.  *See Ford Motor Co. v. Butnaru*, 18 S.W.3d 762, 762 (Tex. App.—San Antonio 2000) ("*Ford Motor Co.*").  That court dissolved the temporary injunction and also found that the Board had exclusive jurisdiction to decide issues based on possible violations of the Code.  *See id*. at 769-70.  The Butnarus then appealed to the supreme court.  *See* Tex. Gov't Code Ann. § 22.225(b)(4), (c) (West 2004); *see also Butnaru v. Ford Motor Co.*, 84 S.W.3d at 202).

### *These proceedings initiated*

On June 6, 2000, after having filed their petition for review with the supreme court, but before the supreme court announced its decision, the Butnarus filed a complaint with the Board against Ford; Graf; the Graf Ford dealership; Kahlig; and Del Rio Ford, Lincoln, Mercury, Ltd., a partnership formed by Kahlig to purchase Graf Ford.  In their complaint, the Butnarus alleged that Ford's exercise of the right of first refusal and Ford's indemnity agreement with Graf and Graf Ford violated the Code.  They also challenged Ford's denial of the dealership transfer to them.  In response, Ford filed a plea to the jurisdiction arguing that the Butnarus lacked standing to file a complaint before the Board.  On November 16, the Board granted the plea and dismissed the Butnarus' complaint with prejudice.

***The Texas Supreme Court's decision in the Val Verde County case[2]***

On June 27, 2002, the supreme court decided that the Board had primary, rather than exclusive, jurisdiction to decide code-based issues on the Butnarus' tortious interference and declaratory-judgment claims in Val Verde County.[3] *Butnaru*, 84 S.W.3d at 208; *see also* Tex. Occ. Code Ann. § 2301.476. The application of the primary-jurisdiction doctrine thus required the trial court in Val Verde County to abate its proceedings to allow the Board "a reasonable opportunity" to determine whether a contractual right of first refusal violates the code's prohibition on manufacturer ownership of dealerships. *Id*. at 208-09.[4]

***These proceedings continue***

On March 21, 2001, while the appeal of the Val Verde County litigation was pending in the supreme court, the Butnarus filed a petition for judicial review of the Board's order.

---

[2] Ford revoked the exercise of its right of first refusal on March 14, 2002. It then gave the Butnarus applications to begin the process for the purchase of the dealership. On May 16, the district court in Val Verde dissolved the temporary injunction on Ford's motion, on the condition that all parties agree that the Butnarus could purchase the dealership and that the Butnarus release Ford, Graf, and Kahlig from all claims. No party claims that the revocation renders this case moot, and it does not appear to do so with regard to the Butnarus' damages claims.

[3] The supreme court issued an initial opinion on June 7, 2001. *See Butnaru v. Ford Motor Co.*, 44 Tex. Sup. Ct. J. 808, 2001 Tex. LEXIS 50 (Tex. June 7, 2001). In that opinion, the supreme court reversed the opinion of the San Antonio Court of Appeals and remanded the case to the trial court for further proceedings on the tortious-interference and declaratory-judgment actions. Because of statutory changes that went into effect before the supreme court issued that opinion, but about which the court was unaware, it withdrew its initial opinion on Ford's motion for rehearing and substituted a new opinion on June 27, 2002, describing the Board's primary jurisdiction in this case. *See generally Butnaru v. Ford Motor Co.*, 84 S.W.3d 198 (Tex. 2002).

[4] The supreme court also reversed the order of the court of appeals dissolving the temporary injunction. *Butnaru*, 84 S.W.3d at 211-12.

5

Following the supreme court's opinion, on October 17, 2003, the district court in Travis County heard arguments on the still-pending appeal of the Board's order. On January 9, 2004, the district court affirmed the Board's decision that the Butnarus lacked standing to prosecute a protest under section 2301.476.[5] But, in the third and fourth paragraphs of the order, the court also stated

> that the [Board's] Final Order is reversed and remanded for further proceedings on issues raised by [the Butnarus] in their Original Complaint [before the Board] arising under [Tex. Occ. Code Ann. §§ 2301.001, .003, .203, .351, and .458],[6] which issues were not addressed by the Board, which issues [the Butnarus] have standing to raise and obtain a decision from the Board on these code construction issues and any further issues raised pursuant to the Supreme Court's holdings in *Butnaru v. Ford*, 84 S.W.3d [198] (Tex. 2002).
>
> It is further ordered, adjudged and decreed that to the extent necessary to implement the terms of this Order and the Texas Supreme Court's holdings in *Butnaru v. Ford*, the Board is ordered to conduct such investigation and hold such proceedings as necessary, in accordance with [Tex. Occ. Code Ann. § 2301.203], in order to specifically respond to the code construction issues raised in this Order.

This appeal followed.

## DISCUSSION

In six issues on appeal, Ford argues that the district court erred in remanding the Butnarus' complaint to the Board. Ford's issues can be classified into two categories. First, Ford

---

[5] The Travis County district court first issued an order on October 28, 2003. On motion for new trial, it amended that order on January 9, 2004. This appeal arises from the amended order.

[6] In its order, the trial court cited the former versions of these provisions. Section 2301.001 is the general purpose and construction section of the motor vehicle commission code. Section 2301.003 mandates that franchises are subject to the code and the code's terms may not waived. Section 2301.203 describes the Board's enforcement powers. Section 2301.351 generally prohibits dealerships from certain activities. Finally, section 2301.458 prohibits manufacturers from preventing the sale of dealerships.

contends that, notwithstanding *Butnaru*'s references to allowing the Board a "reasonable opportunity" to act, *see* 84 S.W.3d at 208-09, 212, there is in essence nothing remaining for the Board to do with regard to the Butnarus' code-based complaints because the Butnarus lack standing to pursue any of them. Instead, Ford urges, the district court should simply have affirmed the Board's order dismissing the Butnarus' claims. Second, Ford complains more specifically that the district court exceeded its authority to the extent it ordered the Board to investigate alleged code violations or purported to hold that the Butnarus had standing to pursue specific code-based claims before the Board.[7] Neither the Board nor the Butnarus have challenged any aspects of the district court's order.

### Standards of review

Because the Board is a quasi-judicial body, we review determinations regarding standing before the Board by the same standard of review by which we review the issue of standing in a trial court. *See* Tex. Occ. Code Ann. § 2301.751 (West 2004); *Board of Adjustment of City of Corpus Christi v. Flores*, 860 S.W.2d 622, 625 (Tex. App.—Corpus Christi, 1993, writ denied). Standing is a component of subject-matter jurisdiction, and so we review the issue of standing *de novo*. *Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993); *see Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex. 1998).

Ford characterizes the standing issues in this case as turning on statutory construction. Statutory construction is a question of law, which we also review *de novo*. *Johnson v. City of Fort*

---

[7] Ford argues its six issues concurrently in its brief, and its arguments overlap multiple issues.

*Worth*, 774 S.W.2d 653, 656 (Tex. 1989).  The primary rule of statutory interpretation is to discern the intent of the legislature and construe the statute to give effect to that intent.  *National Liab. & Fire Ins. Co. v. Allen*, 15 S.W.3d 525, 527 (Tex. 2000); *Union Bankers Ins. Co. v. Shelton*, 889 S.W.2d 278, 280 (Tex. 1994).  Texas courts are to consider, among other factors, the language of the statute, legislative history, the nature and object to be obtained, and the consequences that would follow from alternative constructions, even when a statute is not ambiguous on its face.  Tex. Gov't Code Ann. § 311.023 (West 1998); *Helena Chem. Co. v. Wilkins*, 47 S.W.3d 486, 493 (Tex. 2001); *Union Bankers Ins. Co.*, 889 S.W.2d at 280.

### *The Texas Supreme Court's opinion*

Because the supreme court's opinion in *Butnaru* is central to our disposition of this appeal, we start by briefly summarizing its holdings.  In *Butnaru*, the supreme court decided that the Butnarus' tortious-interference and declaratory-judgment claims raise motor vehicle commission code construction claims that fall outside the Board's exclusive jurisdiction.  *Butnaru*, 84 S.W.3d at 207.  Nothing in the motor vehicle commission code indicates that the legislature intended to replace prospective transferees' common-law remedies in the code.  *Id*. at 208.  Thus, the Butnarus, as prospective transferees, do not need to exhaust administrative remedies before bringing suit in court.  *Id*.

However, the supreme court also determined that the Butnarus' claims raise issues within the Board's special competence and expertise.  *Id*.  In particular, the legislature authorized the Board to resolve disputes between a manufacturer and a dealer when a dealer alleges that a manufacturer unreasonably withheld consent to transfer a dealership.  *Id*.; *see also* Tex. Occ. Code

8

Ann. § 2301.360. Although the code does not establish any procedure for resolving the claim of a *prospective transferee* under the same scenario, the State has an interest in the uniform interpretation of the code provision concerning dealership transfers. *Butnaru*, 84 S.W.3d at 208-09.[8] Thus, the Board has primary, rather than exclusive, jurisdiction. *Id*. Accordingly, the supreme court ordered that "the trial court should abate the claims pending the Board having an opportunity to exercise its primary jurisdiction to determine, at least in the first instance, whether a right of first refusal violates the Code." *Id*. at 209. In other words, "the primary jurisdiction doctrine requires the trial court to abate the claims pending the Board having a reasonable opportunity to determine whether a right of first refusal violates the Code." *Id*.

### *Need for remand*

In light of the supreme court's opinion in *Butnaru*, we must reject Ford's arguments that the Travis County district court erred in remanding the case to the Board. Ford suggests that the Board somehow has already had the "reasonable opportunity" to act on the Butnarus' claims that the supreme court envisioned. It clearly has not. The Board dismissed with prejudice the Butnarus' complaint on November 16, 2000, relying on the sole ground that the Butnarus lack standing to file a protest with the Board. *Nineteen months later*, the supreme court issued its opinion describing the Board's primary jurisdiction to decide the issues in this case and ordered the Val Verde district court to abate its proceedings on the merits until the Board had "a reasonable opportunity" to determine the code-based issues. *Id*. The Board has not yet had an opportunity to consider the *Butnaru*

---

[8] In contrast, the code provides a procedure for adjudicating the claims of a current dealer. *See* Tex. Occ. Code Ann. § 2301.360.

9

directives in the aftermath of the supreme court's opinion. We believe that it must be given that opportunity if we are to be faithful to the supreme court's directive.

The Board's final order dismissing the Butnarus' claims is binding until a court sets it aside. *Vestal v. Texas Employers' Ins. Ass'n*, 285 S.W. 1041, 1044 (Tex. 1926) (agency functions are quasi-judicial; orders are given force of finality and cannot be collaterally attacked); *Whitmarsh v. Buckley*, 324 S.W.2d 298, 302 (Tex. Civ. App.—Houston 1959, no writ). Because the Board issued its order without the benefit of the supreme court's eventual guidance on the very matters before it, it must now have a "reasonable opportunity" to pass upon these matters. *See Subaru of Am., Inc. v. David McDavid Nissan, Inc.*, 84 S.W.2d 212, 221 (Tex. 2002); *Butnaru*, 84 S.W.3d at 208-09; *Gregg v. Delhi-Taylor Oil Corp.*, 344 S.W.2d 411, 413 (Tex. 1961); *see also* J. Bruce Bennett, *Primary Jurisdiction in Texas: Has the Texas Supreme Court Clarified or Confused It?*, 5 Tex. Tech. J. Tex. Admin. L. 177, 180 (2004). The Board cannot exercise its primary jurisdiction as directed to by the supreme court until a court reverses its order and remands the case. After the Board either has acted or has had "a reasonable opportunity" to act, the district court in Val Verde County can then proceed on the merits of the Butnarus' cause of action.

Ford suggests that there would be nothing remaining for the Board to do on remand because, as a matter of law, the Butnarus lack standing to assert their remaining claims before the Board. In essence, Ford believes that the Butnarus' claims are merely derivative of their protest under section 2301.359. Moreover, seeking to refute an alternative potential basis for jurisdiction, Ford asserted during oral argument that the Butnarus' claims cannot be characterized as a complaint seeking to invoke the Board's enforcement powers because the Butnarus did not utilize a complaint

form the Board purportedly provides.[9]  *See* Tex. Occ. Code Ann. §§ 2301.151, .153, .202, .203; *Buddy Gregg Motor Homes, Inc. v. Motor Vehicle Comm'n of the Tex. Dep't of Transp.*, No. 03-04-00543-CV, 2004 Tex. App. LEXIS 11225, at *24-25 (Tex. App.—Austin Dec. 16, 2004, no pet. h.). Exactly what type of procedure the Texas Supreme Court contemplated in *Butnaru* and *Subaru*—and whether it is a procedure distinct from the protest and enforcement procedures already provided under the code—remains somewhat unclear.  *See* Bennett, *supra*, at 180, 184-85.  Although the supreme court has decided that the board must have a "reasonable opportunity" to exercise its primary jurisdiction on the matter even though it is powerless to grant the relief sought, *see* Bennett, *supra*, at 180, it has not clarified what procedures the Board may use to exercise such jurisdiction. But the supreme court's directive is clear that resolution of these issues must begin in the Board. *Butnaru*, 84 S.W.3d at 208-09, 212.

We accordingly hold that the Travis County district court properly reversed the Board's order and remanded for the Board to have an opportunity to act in light of *Butnaru*.  We overrule Ford's issues asserting that the Travis County district court erred in reversing the Board's order and remanding for further proceedings.

***Action required of the Board***

On the other hand, we agree with Ford that certain aspects of the Travis County district court's order exceeded its authority and infringed upon the Board's primary jurisdiction.

---

[9] The Butnarus styled their filing a "complaint" but did not cite any particular code provision establishing the Board's jurisdiction to consider the questions presented.

11

First, Ford argues that the Travis County district court erred in requiring the Board to conduct an investigation of the Butnarus' complaint because the proper exercise of primary jurisdiction, as described in *Butnaru*, is discretionary rather than mandatory. We agree.

The primary jurisdiction doctrine operates to allocate power between courts and agencies when both have authority to make initial determinations in a dispute. *Subaru of Am.*, 84 S.W.3d at 221. In such cases, the agency must have "a reasonable opportunity" to determine, "at least in the first instance," code-based issues. *Butnaru*, 84 S.W.3d at 209. A court retains authority to also decide the issue and may do so after the time period for the agency's "reasonable opportunity" passed without agency action on the matter. *See Subaru of Am.*, 84 S.W.3d at 221; *Butnaru*, 84 S.W.3d at 209. The agency is not mandated to act; rather, trial courts must abate only to afford the agency a "reasonable opportunity" to act. *See Subaru of Am.*, 84 S.W.3d at 220-21; *Butnaru*, 84 S.W.3d at 207-09.

The Travis County district court's order in this case, however, purports to *require* the Board to act—"the Board is ordered to conduct such investigation." This language does not comport with the supreme court's directives in *Butnaru*. We sustain Ford's argument that the error requires a modification of the Board's order, and we substitute the phrase "is ordered to conduct such investigation and" with the word "may" so that the order reads, in relevant part:

> the Board may hold such proceedings as necessary, in accordance with [Tex. Occ. Code Ann. § 2301.203], in order to specifically respond to the code construction issues raised in this Order.

12

Next, Ford argues that the order of the Travis County district court erroneously purports to give the Butnarus standing to pursue claims under sections 2301.001, 2301.003, 2301.203, 2301.351, and 2301.458 of the occupations code. We agree.

In a suit for judicial review of an agency action, the reviewing court is empowered to issue only a general remand when it finds error that prejudices an appellant's substantial rights. *See* Tex. Gov't Code Ann. § 2001.174 (West 2000); *BFI Waste Sys. of N. Am., Inc. v. Martinez Envtl. Group*, 93 S.W.3d 570, 579 n.9 (Tex. App.—Austin 2002, pet. denied). Although courts have authority to hold that an agency erred and must correct its error, courts cannot dictate how to correct the error if, by doing so, the court effectively usurps the authority and discretion delegated to the agency by the legislature. *Texas Dep't of Trans. v. T. Brown Constructors, Inc.*, 947 S.W.2d 655, 659 (Tex. App.—Austin 1997, pet. denied).

The Board ought to be afforded the opportunity to consider questions of procedure and rights under the *Butnaru* opinion before a district court reviews those same issues. *See Gregg*, 344 S.W.2d at 413. However, the Board has not yet had the opportunity to implement the *Butnaru* ruling because the Board issued its order in this case *before* the supreme court issued its opinion. The district court therefore erred by specifying the code provisions the Board ought to address or under which provisions the Butnarus might have standing on remand. We therefore sustain Ford's arguments that the Travis County district court erred in purporting to grant the Butnarus standing before the Board and in delineating code provisions for review; we modify the district court's order to remove such language.

**CONCLUSION**

In light of the supreme court's opinion in *Butnaru* and the Motor Vehicle Board's previous order dismissing the Butnarus' claims with prejudice, we affirm the order of the district court remanding the Board's order for further proceedings. However, we sustain Ford's assertions that the supreme court did not require the Board to act on the Butnarus' complaints. We also sustain Ford's complaint that the Travis County district court erred in including language in its order purporting to grant the Butnarus standing before the Board and delineating code provisions for review. Therefore, we modify the Travis County district court's order so that the third and fourth paragraphs read as follows:

> It is ordered, adjudged and decreed that the Board's Final Order is reversed and remanded for further proceedings on issues raised by the Butnarus in their Original Complaint which were not addressed by the Board and any further issues raised pursuant to the Supreme Court's holdings in *Butnaru v. Ford*, 84 S.W.3d 198 (Tex. 2002).

> It is further ordered, adjudged and decreed that to the extent necessary to implement the terms of this Order and the Texas Supreme Court's holdings in *Butnaru v. Ford*, the Board may hold such proceedings as necessary in order to specifically respond to the code construction issues raised in this Order.

We affirm the district court's order as modified.

_____

Bob Pemberton, Justice

Before Chief Justice Law, Justices B. A. Smith and Pemberton

Modified and, as Modified, Affirmed

Filed: January 21, 2005